**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KATHERINE PAVOLINI** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:07CV633-LG-JMR** |
| | § | |
| **CITY OF PASS CHRISTIAN,** | § | |
| **a Mississippi Municipal Corporation** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART**
**AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion for Summary Judgment [32] filed by the

defendant, the City of Pass Christian, Mississippi. Upon reviewing the submissions of the parties

and the relevant law, the Court finds that the Motion for Summary Judgment should be granted as

to the plaintiff's age discrimination, disability discrimination, Equal Pay Act, and due process

claims, but is denied as to the plaintiff's retaliation claim.

## FACTS

The plaintiff, Katherine Pavolini, served as municipal court clerk for the City of Pass

Christian, Mississippi, from 1979 until she was terminated in 2005.[1] (Ex. 9 to Pl.'s Resp. at 59;

Pl.'s Compl. at 2). Her supervisor was Municipal Court Judge Frank Wittmann. However,

during her period of employment with the City, the Mayor and the Board of Aldermen had the

final authority in hiring and firing employees.

---

[1] Pavolini was originally hired as a police dispatcher for the City in 1978, but began performing the duties of both a police dispatcher and court clerk in 1979. (Ex. 9 to Pl.'s Resp. at 59). In 1989, the positions of police dispatcher and court clerk were split into two positions, and she worked solely as court clerk until she was terminated. (*Id.*)

Although Pavolini claimed in an affidavit and in her Complaint that she was informed that she was fired on October 27, 2005, in her deposition she testified that Judge Wittmann told her on the telephone during the month of September that she had been terminated. (Ex. 9 to Pl.'s Resp. at 88; Ex. 8 to Pl.'s Dep.; Compl. at 2). The minutes of the Board of Aldermen tend to show that she was terminated on October 27, 2005. (Ex. 3 to Pl.'s Resp.).

With the approach of Hurricane Katrina, Pavolini and her husband evacuated to Columbia, Mississippi. (Ex. 2 to Pl.'s Dep.) After the storm, she claims that the Mississippi Highway Patrol would not allow her to travel back home. (Ex. 9 to Pl.'s Resp. at 9). Therefore, she and her husband went to Oklahoma. (*Id.* at 9-10). They later went to live in Tennessee. (*Id.* at 43). Pavolini and Judge Wittmann dispute the number of times that they spoke on the phone during the time that she was absent following Hurricane Katrina, but both parties agree that she told Judge Wittmann in September that she was having financial difficulties, that her van was overheating, and that she, her dog, and her husband were sick. (*Id.* at 16-18; Ex. 10 to Pl.'s Resp. at 49, 78). Judge Wittmann stated that Pavolini was told to return to work in mid-October, and Pavolini testified that Judge Wittmann told her that he wanted to try to hold court in mid-October. (Ex. 9 to Pl.'s Resp. at  17, 26).

As a result of the financial hardships she endured after the storm, and even though she was not working, the City paid Pavolini's salary during the months of August, September, and October 2005. (*Id.* at 29). She also admits that she received one check as an advance on compensation she was entitled to for vacation time she had accrued.[2] (*Id.* at 43). Pavolini claims that she originally told Judge Wittman that she would return to work soon after October 27, 2005, but that because her brother was in a serious automobile accident she did not return to Pass Christian until November 6, 2005. (*Id.* at 49). Judge Wittmann recommended her termination. She was terminated by The Board of Aldermen on October 27, 2005. (Ex. 3 to Pl.'s Resp.) Pavolini was fifty-seven years old at the time of the termination.

---

[2] The City asserts that she received payment for a portion of her vacation time with each paycheck.

Pavolini filed a charge of discrimination with the Equal Employment Opportunity Commission on December 15, 2005, alleging discrimination based on age, retaliation, and disability.  (Ex. A to Def.'s Mot.)  The dates of discrimination were listed as October 27, 2005, through November 6, 2005, but Pavolini added a handwritten notation that it "began after my work injury and my refusal to break the law."  (*Id.*)  In the charge, she stated:

> I requested vacation time after leaving the Coast due to the [sic] Hurricane Katrina[.] While on vacation time after getting away from the Gulf Coast during Hurricane Katrina, I was terminated from my position of Municipal Court Clerk.  I was never told by anyone when to come back – I did return on November 6, 2005.  I was due to report back to work on November 6, 2005.  I had been employed in the position since October 1978.
>
> Several day [sic] before I was supposed to return, I called Municipal Court Judge Frank P. Whittman [sic], Jr., and told him that I needed a few more days because my brother had been in an accident and we didn't know if he would live.  Judge Whittman [sic] told me that I had been terminated on October 27, 2005, but he did not tell me the reason and I did not get a letter notifying me of my termination and the reason - as required by Civil Service.  When I reported to work on November 6, 2005, the Deputy Court Clerk told me that I had been terminated.  I requested a copy of the minutes where I was terminated, but still have not recieved [sic] this information, nor has the City finished paying me my vacation I earned[.]
>
> I believe that my employer discriminated against me because of my age (57) in violation of the Age Discrimination in Employment Act.  I have been back in the city, ready and willing to resume my duties, but a younger employee was appointed to my position.  This employee has never had any training in my position.
>
> I also believe that I was terminated because I have had medical problems that my employer regards as disabilities, and because I also have an open worker's compensation case which caused disabilities as the result of an on-the-job accident.

(Ex. A to Def.'s Mot.)  After receiving notice of her right to sue the City, she filed a Complaint alleging age discrimination, violation of the Americans with Disabilities Act, violation of the

Equal Pay Act of 1963,[3] and denial of her right to due process.  (Compl.)  Pavolini did not allege

retaliation in her Complaint, but it appears that she now seeks to assert such a claim because she

was allegedly offered a position by the City's police department but was later informed that she

could not have the job because she had filed an EEOC claim against the City.  (Pl.'s Mem. at 11).

She also alleges that she was forced to stand up for long hours and collect fines as retaliation,

even though she has bad knees.  (Ex. 9 to Pl.'s Resp. at 92).

     Judge Wittmann testified that he recommended that Pavolini be fired, because she did not

return to work after Hurricane Katrina, and because she never called him personally after the

storm to inform him when she would be returning to work; rather, she called a dispatcher with the

police department.[4]  (Ex. 10 to Pl.'s Resp. at 53).  He testified that he had told her prior to the

storm that he was her supervisor and she should report to him when she had problems.[5]  (Id.)  He

also testified that he had done everything that she had asked him to do– sending her paychecks

and her vacation pay– and did not understand why she did not return to work after she received

the money to assist her in traveling home.  (Id. at 49-51).  Furthermore, he expressed anger that

Pavolini traveled to Tennessee after he arranged for her paychecks and vacation funds to be sent

to her, rather than using the funds to return to Pass Christian.[6]  (Id. at 62).  After Pavolini's

---

[3] The parties agree that Pavolini's Equal Pay Act claim has been abandoned and should be dismissed.

[4] Pavolini testified that she had attempted to contact Judge Wittmann at his home but was unable to get through.  (Ex. 9 to Pl.'s Resp. at 14).  She did not attempt to call him at his office, because she assumed that the telephones were not working in Pass Christian.  (Id.)

[5] Judge Wittmann testified that he initiated the telephone calls with Pavolini after obtaining her phone number from the dispatcher.  (Ex. 9 to Pl.'s Resp. at 49-51).

[6] Pavolini asserts that she did not return to Pass Christian because she had nowhere to live.

termination, the assistant court clerk was moved into the court clerk position. (*Id.* at 56-57). The parties do not dispute that the assistant court clerk is younger than Pavolini. Judge Wittmann testified that Pavolini's age and alleged disability did not play any part in his decision to recommend her termination. (*Id.* at 105). He testified that he is seventy-two years old, and he does not ask his employees what age they are. (*Id.*) He also testified that he did not know the age of Pavolini or the assistant court clerk that replaced her. (*Id.*)

### DISCUSSION

Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. FED. R. CIV. P. 56. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

**Age Discrimination**

The Age Discrimination in Employment Act (ADEA) provides: "It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff can demonstrate age discrimination in two ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of proof." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). If, as in this lawsuit, there is no direct evidence, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), must be utilized. A plaintiff must first set forth a prima facie case of age discrimination by demonstrating: (1) that she was discharged; (2) she was qualified for the position at issue; (3) she was within the protected class; and (4) she was replaced by someone younger or outside the protected group, or otherwise discharged because of her age. *Berquist*, 500 F.3d at 349. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the defendant's stated reason was untrue and was a pretext for discriminatory conduct. *Id.* at 804.

> Proof that an employer's justification is pretextual is enough to support survival of summary judgment on a discrimination claim . . . . However, in instances such as when "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [i]s abundant and uncontroverted evidence that no discrimination ha[s] occurred," no rational fact finder can conclude the action is discriminatory.

*Shakir v. Prairie View A & M Univ.*, 178 Fed. Appx. 361, 363 (5th Cir. Apr. 28, 2006) (quoting

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

It is undisputed that Pavolini was discharged and that she was within the protected class.

However, the City argues that Pavolini was no longer qualified for her position since she would

not return to work and since she allegedly sought and received disability payments after her

termination.  It also asserts that she was not replaced by someone younger than her or outside the

protected class within close proximity after her termination.  It is not necessary for the Court to

reach these arguments.  Assuming that Pavolini has stated a prima facie case, she has failed to set

forth any evidence that tends to show that the City's articulated reason for termination is a mere

pretext for unlawful discrimination.

Judge Wittmann testified that Pavolini was terminated because of lack of communication

and failure to return to work after the storm.  He was particularly upset by the fact that the City

continued to pay Pavolini after the storm and sent additional funds for her accrued vacation time

pursuant to her expressed need of money to return home, but she used the money to travel to

Tennessee rather than to return to work.  Pavolini admits that she did not return to Pass Christian

until November 6, 2005, although Hurricane Katrina struck over two months earlier.

Furthermore, she admits that she continued to receive her salary, as requested, even though she

was not working during that time.  She also admits that she traveled to Tennessee rather than

returning to Pass Christian.  She also does not dispute that she never attempted to contact Judge

Wittmann at his office and only made one attempt to contact him at home.  Finally, Pavolini has

tendered no evidence of any kind which tends to show that the City's reasons for her termination

terminating her were a pretext for age discrimination.

-7-

**DISABILITY DISCRIMINATION**

Pavolini also claims that she was terminated because of her disability.  The Americans with Disabilities Act ("ADA") prohibits an employer from discriminating against a qualified individual because of a disability.  42 U.S.C. § 12112.  To prevail on an ADA claim, a plaintiff must demonstrate that (1) she has a disability; (2) she is qualified for the position sought; and (3) she was discriminated against because of her disability.  *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).  The ADA defines a disability as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such impairment; or being regarded as having such an impairment."  42 U.S.C. § 12102(2)(A).  Under the ADA, an employer is liable for failing to accommodate qualified individuals with known physical or mental limitations, unless the employer can demonstrate that such accommodation would impose an undue hardship.  42 U.S.C. § 12112(b)(5)(A).  Reasonable accommodation may include job restructuring, part-time or modified work schedules, reassignment to a vacant position, and acquisition or modification of equipment or devices.  42 U.S.C. § 12111(9).  It is the plaintiff's burden to request reasonable accommodation.  *Jenkins*, 487 F.3d at 316.

Pavolini has not demonstrated that she was disabled under the ADA.  At her deposition, she testified that she suffers from respiratory problems, knee problems, a shoulder problem, and a gastrointestinal problem.  She admitted that her medical problems did not interfere with her ability to work or her ability to perform daily tasks, other than slowing her down a bit.  (Ex. 9 to Pl.'s Resp. at 75-77).  In addition, Pavolini's Memorandum in Opposition to the City's Motion for Summary Judgment argues that her termination violated the ADA because she requested a reasonable accommodation– that she be allowed additional time away from work because she

-8-

was sick– but she was denied accommodation and was terminated.  However, at her deposition,

Pavolini testified that she did not ask Judge Wittmann for accommodation concerning her knee

problems or any other illnesses or ailments when she spoke with him after Katrina.  (*Id.* at 17).

She also testified that she did not give any specifics to Judge Wittmann concerning any ailment

after Katrina and only told him that she and her husband were ill and going to see a doctor.  (*Id.*

at 18).  Furthermore, Pavolini testified that her decision not to return to Pass Christian from

Oklahoma did not have anything to do with her age or her alleged disability.  (*Id.* at 44).  Since

Pavolini's alleged disability did not prevent her from returning to work, there is no genuine issue

of material fact that Pavolini's request for additional time off did not constitute a request for

reasonable accommodation under the ADA.[7]

### RETALIATION

The City asserts that Pavolini did not exhaust her administrative remedies with regard to

her retaliation claim.  A charge asserting discrimination under the ADEA or the ADA must be

filed with the EEOC within 180 days after the alleged unlawful practice occurred.  If an EEOC

charge is untimely filed, a suit based upon the untimely charge should be dismissed.  *Lovett v.

Barbour Int'l, Inc.*, 211 Fed. Appx. 281, 283 (5th Cir. Dec. 14, 2006)(ADEA); *Dao v. Auchan

Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996) (ADA).

A retaliation claim is not raised in Pavolini's Complaint.  In her EEOC charge, she

claimed retaliation but only asserted that she was terminated because of her workers'

---

[7] It should be noted that the Fifth Circuit has previously held that a request for indefinite
leave is not a reasonable accommodation under the ADA and an individual who cannot attend
work is not a qualified individual under the statute.  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d
755, 759-60 (5th Cir. 1996).  There is no indication that Pavolini ever gave Judge Wittmann a date
certain on which she would return to work.

compensation claim, her age, and her medical problems.  In her Memorandum in Opposition to the Motion for Summary Judgment and in her deposition, she asserts that she was forced to stand up for long hours and collect fines even though she had bad knees.  Pavolini claims that this was retaliation for requesting light duty after shoulder surgery in early January of 2005, but her EEOC charge was not filed until December 15, 2005.  (Ex. 9 to Pl.'s Resp. at 71-73).  Thus, this alleged retaliation occurred more than 180 days prior to the filing of the EEOC charge, and she cannot recover for this alleged retaliation.

Pavolini also asserted that sometime after November 6, 2005, she was offered a position by the City Police Chief, but she was later told that she could not have the job because she had an EEOC charge against the City.  (*Id.* at 90).  The City denies that Pavolini was ever offered a position within the police department.  The EEOC charge only discusses Pavolini's termination and the actions of the municipal court and Board of Aldermen.  It does not in any way discuss any actions by the police department or her attempt to obtain other jobs from the City.  However, Pavolini did check the box marked "retaliation" on her charge.  The Fifth Circuit has previously noted that by simply checking the box corresponding to the alleged basis for unlawful employment action, a plaintiff sufficiently exhausts her administrative remedies.  *Miller v. Sw. Bell Tel. Co.*, 51 Fed. Appx. 928 (5th Cir. Oct. 7, 2002).  Therefore, Pavolini has exhausted her administrative remedies with regard to her retaliation claim concerning the position in the police department.  Therefore, the Court must determine whether the alleged statement creates a genuine issue of material fact concerning whether the City retaliated against her.

"If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would

have taken the same action regardless of discriminatory animus." *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252-53 (1989)).  The *McDonnell Douglas* burden shifting analysis only applies to discrimination claims based on circumstantial evidence.

In the present case, Pavolini asserts that Gloria Sanders of the Pass Christian Police Department told her that she "wasn't allowed to be hired because [she] had filed an EEOC complaint and there was a possible litigation."  (Ex. 9 to Pl.'s Resp. at 90).  Pavolini testified that Sanders "wanted to hire her" and the Chief of Police initially agreed, but she was later denied the job.  (*Id.*)  The Court cannot determine conclusively from the evidence before it whether these alleged statements are mere hearsay.  *See Ramirez v. Gonzalez*, 225 Fed. Appx. 203, *6 (5th Cir. Jan. 30, 2007).  In addition, it is unclear whether these statements are stray remarks or direct evidence of unlawful retaliation by a person in the employment decision making process.  The City argues that Pavolini cannot demonstrate causation because she testified that the alleged retaliation by the police department occurred before she filed her EEOC charge, which is the only protected activity engaged in by Pavolini.  However, the date on which the statement was made is likewise unclear.  Pavolini testified that she was offered the job in late November of 2005 but testified that she was uncertain of the date on which she was refused the job.  (*Id.*)  She stated that it was "right at a month later."  (*Id.*)  The EEOC charge was filed on December 15, 2005.  Viewed in the light most favorable to the non-moving party, there is a genuine issue of material fact regarding whether the alleged retaliation preceded the EEOC charge.  The City's Motion lacks the factual maturity needed to support summary judgment on the claim of retaliation.

DUE PROCESS

Finally, Pavolini asserts her due process rights were violated when she was denied a post-termination hearing.  To establish a viable due process claim, a plaintiff must show that she had a property interest in continued employment.  *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997).  "A government employee may possess such an interest by operation of contract or state law."  *Cabrol*, 106 F.3d at 105.  The Court looks to state law and local law in order to determine whether a government employee had a property interest in continued employment.  *Id.* at 106.

Pavolini asserts that she had a property interest in her continued employment because she was entitled to civil service protection.  In Mississippi, there are two separate civil service systems: one that applies only to full time employees of the city police and fire departments,[8] and a second that applies to municipal employees on a monthly salary.[9]  *Bullock v. Miss. Emp. Sec. Comm'n*, 697 So. 2d 1147, 1149 (Miss. 1997).  The civil service system applicable to police and fire departments was established by Miss. Code Ann. §§ 21-31-1 through 21-31-27, and the civil service system applicable to other municipal employees was created by Miss. Code Ann. §§ 21-31-51 through 21-31-75.  Pavolini argues that she had civil service protection when she worked

---

[8] A city can extend the protection provided to the police and fire department to other city employees under certain circumstances, but there is no evidence before the Court that the City extended protection to Pavolini.

[9] The civil service system applicable to other municipal employees is required only in municipalities operating under a commission form of government and having a population of more than twenty-one thousand according to the federal census of 1950.  Miss. Code Ann. § 21-31-51. There is no evidence, aside from evidence that the City has a board of aldermen, before the Court regarding whether the City was required to establish a civil service system for municipal employees other than those employed in the police and fire departments.

as a police dispatcher and the protection should have moved with her when she became a municipal court clerk.  Under the circumstances, it is not necessary for the Court to decide which civil service system applies to Pavolini.  Both civil service systems provide that an employee may appeal her discharge, within ten days after the discharge, to the civil service commission.  Miss Code Ann. §§ 21-31-23 and 21-31-71.  The commission will then make findings that are final unless the employee appeals the commission's findings to the circuit court of the county in which the municipality is located within thirty days.  *Id.*  Where an employee does not request an investigation by the civil service commission, his lawsuit must be dismissed since a civil service investigation is the employee's exclusive remedy.  *City of Jackson v. Thomas*, 331 So. 2d 926, 927 (Miss. 1976); *see also Scott v. Lowe*, 78 So. 2d 452, 456 (Miss. 1955); *Rathjen v. Litchfield*, 878 F.2d 836, 840 (5th Cir. 1989) (explaining that a plaintiff cannot skip an available state remedy and then argue that the deprivation of due process by the state was the inadequacy or lack of the skipped remedy).  By failing to timely appeal her discharge to the commission, Pavolini failed to exhaust her administrative remedies.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [32] filed by the defendant, the City of Pass Christian, Mississippi, is **GRANTED** as to Plaintiff's age discrimination, disability discrimination, Equal Pay Act, and due process claims and **DENIED** as to Plaintiff's retaliation claim.

**SO ORDERED AND ADJUDGED** this the 24th day of June, 2008.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.

-13-

UNITED STATES DISTRICT JUDGE